# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Cr. No. __13-273 SRN/JJK__ |
| | ) |
| Plaintiff, | ) **INDICTMENT** |
| v. | ) |
| | ) |
| **1. ALON BERKMAN,** | ) 18 U.S.C. § 371 |
| a/k/a Allen Berkman, | ) 21 U.S.C. §§ 331(a), 333(a)(2), 353(b) |
| a/k/a Mike, | ) 18 U.S.C. § 1341 |
| a/k/a Robert, | ) 18 U.S.C. § 1343 |
| | ) 18 U.S.C. § 1349 |
| **2. MORAN OZ,** | ) 21 U.S.C. §§ 841(a)(1) and (b)(1)(E) |
| a/k/a Ron Oz, | ) 21 U.S.C. §§ 841(h) and (b)(1)(E) |
| a/k/a Ron Martin, | ) 21 U.S.C. §§ 846, 841(b)(2) |
| | ) 18 U.S.C. § 1956(h) |
| **3. BABUBHAI PATEL,** | ) 18 U.S.C. § 981(a)(1)(C) |
| a/k/a Babu Patel, | ) 18 U.S.C. § 982(a)(1) and (b) |
| a/k/a Bob Patel, | ) 28 U.S.C. § 2461(c) |
| | ) 18 U.S.C. § 2 |
| **4. JONATHAN WALL,** | ) |
| a/k/a John Wall, | ) |
| a/k/a Wayne Hatfield, | ) |
| a/k/a John Wayne Hatfield, | ) |
| | ) |
| **5. SHAI REUVEN,** | ) |
| a/k/a Michael Ross, | ) |
| | ) |
| **6. LACHLAN SCOTT MCCONNELL,** | ) |
| a/k/a Scott Lachlan McConnell, | ) |
| a/k/a Robert Holamez, | ) |
| a/k/a Phillip Johnson, | ) |
| | ) |
| **7. OMER BEZALEL,** | ) |
| a/k/a Michael Betsalel, | ) |
| a/k/a Will Morrissi, | ) |
| a/k/a Joseph Zazzaro, | ) |
| a/k/a Larry Misquez, | ) |
| | ) |
| **8. ELIAS KARKALAS,** | ) |
| | ) |
| **9. PRABHAKARA RAO TUMPATI,** | ) |
| | ) |
| **10. ONOCHIE AGHAEGBUNA, and** | ) |
| | ) |
| **11. EYAD MAHROUQ,** | ) |

Defendants

SCANNED

NOV 1 3 2013

U.S. DISTRICT COURT MPLS

U.S. v. Alon Berkman, et al.

THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTION

At times relevant to this Indictment:

1.     RX Limited was an international organization which marketed and sold various drugs, which, by law, require a prescription, including drugs that were controlled substances under Federal law, to United States customers.  The organization was managed and operated by various individuals known and unknown to the grand jury, including defendants ALON BERKMAN, a/k/a Allen Berkman, a/k/a Mike, a/k/a Robert, MORAN OZ, a/k/a Ron Oz, a/k/a Ron Martin, JONATHAN WALL, a/k/a John Wall, a/k/a Wayne Hatfield, a/k/a John Wayne Hatfield, SHAI REUVEN, a/k/a Michael Ross, LACHLAN SCOTT MCCONNELL, a/k/a Scott Lachlan McConnell, a/k/a Robert Holamez, a/k/a Phillip Johnson, and OMER BEZALEL, a/k/a Michael Betsalel, a/k/a Will Morrissi, a/k/a Joseph Zazzaro, a/k/a Larry Misquez, collectively referred to in this Indictment as "RX Limited associates."

2.     RX Limited sold prescription drugs over the Internet to customers in the District of Minnesota and elsewhere, using various marketing website addresses, including: www.acmemeds.com; www.all-the-best-rx.com; www.cheaprxmeds.net; www.allpharmmeds.com; www.BuyMedsCheap.com; www.my-online-drugstore.com; www.preapprovedrx.com; www.matrixmeds.com; www.your-pills.com; www.speedyrxdrugs.com; www.123onlinepharmacy.com; www.epropecia.com; www.fioricetdosage.com.  The websites ("RX Limited's marketing websites") were linked via the Internet to RX Limited's Internet infrastructure and operating systems, and enabled customers to place drug orders over the Internet, and through various toll-free telephone numbers, without a physical examination or doctor-patient relationship.  RX Limited's marketing websites were operated, in some instances, by RX Limited, and, in other instances, by

- 2 -

numerous individuals and companies (collectively, "RX Limited's marketing affiliates") who were recruited and paid by RX Limited to post and, in part, manage their websites on the Internet to maximize the number of prescription drugs sold through RX Limited. RX Limited's marketing affiliates were paid a commission per sale initiated through their respective websites.

3.      RX Limited employed physicians, and persons posing as physicians, to approve the drug orders placed using RX Limited's marketing websites, and toll-free telephone numbers, and to authorize the purported prescriptions for the customer. Each physician employed by RX Limited ("RX Limited physician") was paid a commission for each order he or she approved.

4.      RX Limited employed U.S. pharmacies to fill RX Limited customers' drug orders. Each pharmacy employed by RX Limited was paid a commission for each order filled by the pharmacy ("RX Limited fulfillment pharmacy"). Once an order was filled, the prescription drugs were shipped to the customer via commercial carrier, including FedEx and the United States Postal Service ("USPS"). Shipment charges were paid by RX Limited through accounts controlled by RX Limited's associates.

5.      ALON BERKMAN, a/k/a Allen Berkman, a/k/a Mike, a/k/a Robert ("BERKMAN"), an Israeli citizen, was an RX Limited associate who resided in Israel and was involved in the management of RX Limited's Internet infrastructure, shipping logistics, pharmacy relations, and merchant processing and banking operations.

6.      MORAN OZ, a/k/a Ron Oz, a/k/a Ron Martin ("OZ"), an Israeli citizen, was an RX Limited associate who resided in Israel and managed day-to-day operations for, and communications with, RX Limited fulfillment pharmacies.

7.      BABUBHAI PATEL, a/k/a Babu Patel, a/k/a Bob Patel ("PATEL"), was an RX Limited fulfillment pharmacist. PATEL was also the owner of pharmacies in Michigan, and assisted RX Limited in setting up merchant processing accounts in the United States to process

- 3 -

credit card transactions of some of RX Limited's drug orders.

8.    JONATHAN WALL, a/k/a John Wall, a/k/a Wayne Hatfield, a/k/a John Wayne Hatfield ("WALL"), was an RX Limited associate who resided at various times in the Philippines and in Kentucky.  WALL managed an RX Limited call center in the Philippines, and assisted with other RX Limited operations in the United States, including the recruiting of RX Limited fulfillment pharmacies.

9.    SHAI REUVEN, a/k/a Michael Ross ("REUVEN"), an Israeli citizen, was an RX Limited associate who resided in the Philippines and other locations.  REUVEN established merchant accounts and was involved in the setup of technical processing methods used to process RX Limited's Internet drug order transactions.

10.    LACHLAN SCOTT McCONNELL, a/k/a Scott Lachlan McConnell, a/k/a Robert Holamez, a/k/a Phillip Johnson ("MCCONNELL"), a Canadian citizen, was an RX Limited associate who resided at various times in the Philippines and the United States.  MCCONNELL assisted with various aspects of RX Limited's operations, including establishing corporations, bank accounts, credit cards, and shipping accounts, and pharmacy recruitment in the United States.

11.    OMER BEZALEL, a/k/a Michael Betsalel, a/k/a Will Morrissi, a/k/a Joseph Zazzaro, a/k/a Larry Misquez ("BEZALEL"), an Israeli citizen, was an RX Limited associate who resided in Israel.  BEZALEL managed several aspects of RX Limited's operations, including, among other duties, establishing corporations, bank accounts, credit cards, and shipping accounts, communicating with RX Limited fulfillment pharmacies, and handling shipping logistics.

12.    ELIAS KARKALAS was an RX Limited physician licensed to practice medicine in Pennsylvania, and also conducted business as Upper Merion Family Practice, P.C.

- 4 -

13.     PRABHAKARA RAO TUMPATI, an Indian citizen, was an RX Limited physician licensed to practice medicine in Pennsylvania, New Jersey, and California. TUMPATI also recruited other physicians and someone posing as a physician to authorize RX Limited drug orders, and was paid a commission for each order they authorized.

14.     ONOCHIE AGHAEGBUNA, a Canadian citizen, was an RX Limited physician licensed to practice medicine in Virginia and Florida. AGHAEGBUNA surrendered his Virginia medical license in March 2008. In November 2008, AGHAEGBUNA's Florida medical license was suspended, and in August 2011 it was revoked.

15.     EYAD MAHROUQ was a pharmacist licensed in Texas, and the owner of El Rancho Pharmacy, an RX Limited fulfillment pharmacy located in Dallas, Texas.

16.     The manufacture, distribution, and dispensing of prescription drugs are governed in the United States by the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., the Federal Food, Drug, and Cosmetic Act, Title 21, United States Code, Section 301, et seq., and other federal and state statutes and regulations.

17.     The National Association of Boards of Pharmacy's ("NABP") Verified Internet Pharmacy Practice Sites ("VIPPS") program was created by the NABP in response to concerns regarding the safety of pharmacy practices on the Internet. VIPPS certified online pharmacy sites that met certain criteria, including verification of all necessary state pharmacy and pharmacist licenses, verification of patient privacy, security of prescription orders, and adherence to quality assurance. VIPPS also ensured that online pharmacies provide a meaningful consultation between patients and pharmacists, comply with applicable state and federal laws and regulations, including policies and procedures that assure that prescription medications are not prescribed or dispensed based on telephonic, electronic, or online medical consultations without a pre-existing patient-prescriber relationship that included an in-person physical

examination.  None of RX Limited's marketing websites obtained VIPPS accreditation.

## COUNT ONE
### (Conspiracy to Violate the Federal Food, Drug, and Cosmetic Act)

1.      The United States Food and Drug Administration ("FDA") was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by assuring, among other things, that drugs sold to humans were safe and effective for their intended uses and bore labeling containing true and accurate information.  FDA's responsibilities included regulating the labels, labeling, distribution, and manufacture of prescription drugs shipped or received in interstate commerce.

2.      FDA was also responsible for, among other things, enforcing the provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), Title 21, United States Code, Section 301, et seq.  Under the FDCA, the term "drug" included articles which were (1) recognized in the official United States Pharmacopeia or official National Formulary or any supplement to any of them; (2) intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; or (3) intended to affect the structure or any function of the body of man.  21 U.S.C. § 321(g)(1)(A) (B) and (C).

3.      Some of the drugs regulated under the FDCA were "prescription drugs." "Prescription drugs" were those drugs, which, because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary to their use, were not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which were required to be administered under the professional supervision of a practitioner licensed by law to administer such drugs as a condition of FDA approving any such drug to be placed on the market.  21 U.S.C. § 353(b)(l)(A) and (B).

4.      Soma (containing carisoprodol) was a muscle relaxant and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B).  It was

- 6 -

U.S. v. Alon Berkman, et al.

also approved for sale as generic carisoprodol.

5. Ultram (containing tramadol), which may induce psychic and physical dependence, was a painkiller and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(l)(A) and (B). It was also approved for sale as generic tramadol.

6. Fioricet was a combination drug containing butalbital, acetaminophen, and caffeine, and was approved to treat tension headaches and was a prescription drug within the meaning of Title 21, United States Code, Section 353(b)(1)(A) and (B). It was also approved for sale as a generic prescription drug and sold under various names, such as Esgic Plus.

7. The FDCA prohibited the introduction or delivery for introduction into interstate commerce, or the causing of such introduction or delivery, of any drug that was misbranded. 21 U.S.C. § 331(a).

8. The act of dispensing prescription drugs without the prescription of a practitioner licensed by law to administer such drug was an act which caused the drug to become misbranded while held for sale. 21 U.S.C. § 353(b)(1).

9. A drug prescription is invalid under the FDCA unless it is issued in the usual course of professional practice and for a legitimate medical purpose. A valid prescription requires a bona fide physician-patient relationship. Factors that establish the existence of a bona fide physician-patient relationship and thus a valid prescription include whether the physician considered the actual needs of the patient, the quantity of the drug prescribed, the type of drug prescribed and for what purpose, the extent to which the physician supervised the issuance of the drug, and whether the physician adhered to prevailing medical standards when issuing the prescription, and acted in accordance with generally accepted practices.

10. Beginning in or about May 2004, the exact date being unknown to the United States, and continuing until in or about December 2012, in the District of Minnesota and

U.S. v. Alon Berkman, et al.

elsewhere, defendants herein,

**ALON BERKMAN,
MORAN OZ,
BABUBHAI PATEL,
JONATHAN WALL,
SHAI REUVEN,
LACHLAN SCOTT MCCONNELL,
OMER BEZALEL,
ELIAS KARKALAS,
PRABHAKARA RAO TUMPATI,
ONOCHIE AGHAEGBUNA, and
EYAD MAHROUQ,**

conspired and agreed, together and with others known and unknown to the grand jury, to commit

an offense against the United States, that is, to introduce and cause the introduction and delivery

for introduction into interstate commerce from various locations in the United States, outside the

District of Minnesota, to various locations in the United States, including the District of

Minnesota, with the intent to defraud and mislead, prescription drugs, including the prescription

drugs Fioricet (butalbital/acetaminophen/caffeine), Soma (carisoprodol), and Ultram (tramadol),

and their generic equivalents, which were misbranded within the meaning of Title 21, United

States Code, Section 353(b)(1), in that they were dispensed without the prescription of a

practitioner licensed by law to administer such drug, in violation of Title 21, United States Code,

Sections 331(a) and 333(a)(2).

## OBJECT OF THE CONSPIRACY

11.     The object of the conspiracy was for defendants and their co-conspirators to

obtain substantial revenues and profits by illegally offering for sale and selling -- without valid

prescriptions -- prescription drugs, including Fioricet, Soma, and Ultram, and their generic

equivalents, via Internet websites and telephone call centers, and causing them to be shipped to

consumers in the United States and elsewhere.

## MANNER AND MEANS OF THE CONSPIRACY

- 8 -

U.S. v. Alon Berkman, et al.

It was part of the conspiracy that:

12.     Defendants and their co-conspirators, owned, operated, were affiliated with, and used Internet websites to market prescription drugs offered for sale through various businesses collectively known as RX Limited.  RX Limited's marketing websites were linked via the Internet to RX Limited's Internet infrastructure and operating systems, and enabled customers in Minnesota and elsewhere to place drug orders over the Internet, and by various toll-free telephone numbers listed on RX Limited's marketing websites, without a physical examination or bona fide doctor-patient relationship.

13.     During the order process, each customer chose the type, quantity, and dosage of prescription drugs the customer wished to purchase, filled out a brief online order form answering questions about the customer's medical condition and history, and paid for the drug order with a credit card.  RX Limited did not verify the information customers provided, including their identities, ages, and qualifying medical conditions, and RX Limited's customers did not provide medical records or any prior prescription to RX Limited.

14.     RX Limited's associates, including defendants ALON BERKMAN, MORAN OZ, JONATHAN WALL, SHAI REUVEN, LACHLAN SCOTT MCCONNELL and OMER BEZALEL, and their co-conspirators, recruited and paid physicians, those posing as physicians, and pharmacies ("RX Limited physicians" and "RX Limited pharmacies") to authorize sham prescriptions and fraudulently dispense prescription drugs.  In virtually all instances, RX Limited physicians had no contact with RX Limited's customers, whether face-to-face, on the telephone, or by electronic mail, and retained no records of their purported "consultations."

15.     Defendants and their co-conspirators also arranged and paid for the drugs to be shipped to customers through various shipping accounts with commercial carriers and the United States Postal Service.  In doing so, defendants and their co-conspirators unlawfully dispensed,

<u>U.S. v. Alon Berkman, et al.</u>

caused to be dispensed, and aided and abetted the dispensing of prescription drugs to customers

who lived throughout the United States, including in Minnesota, without (a) verifying the

customer's medical complaint, (b) having an adequate patient history, (c) performing a mental or

physical exam, (d) using appropriate diagnostic or laboratory testing, and (e) providing a means

to monitor the customer's response to the medication.

16.     Through RX Limited's marketing websites, defendants and their co-conspirators

made various misrepresentations to customers, including that the websites provided a "valid

means for patients to receive treatment" and obtain prescription medication by completing an

online questionnaire without a physical examination, knowing this to be a false representation

and knowing that the RX Limited scheme constituted an illegal method of dispensing,

distributing, and obtaining prescription drugs in the United States.  Customers were also falsely

informed by RX Limited's marketing websites, customer service employees at RX Limited call

centers, and other means, that a physician would review the online or telephone order form and

determine whether to authorize the distribution and dispensing of the requested drugs before

defendants sent the drugs to the customers, when, in fact, at various times during the conspiracy,

the order forms were not reviewed by a physician.

17.     RX Limited physicians, including defendants ELIAS KARKALAS,

PRABHAKARA RAO TUMPATI, and ONOCHIE AGHAEGBUNA, with the knowledge and

approval of their co-conspirators, approved hundreds of prescriptions per day for RX Limited.

Each RX Limited physician logged onto an Internet website that was designed by RX Limited

for the specific RX Limited physician and which was linked to RX Limited's Internet

infrastructure and operating systems.  The physician's website was designed by RX Limited so

that the RX Limited physician could readily approve multiple prescription drug orders at one time,

without the physician having reviewed the orders.  In general, RX Limited physicians made no

U.S. v. Alon Berkman, et al.

changes to the information already provided by the customer regarding the prescription drugs being ordered, such as the type, quantity, and dosage. After the physician approved an order, RX Limited's Internet infrastructure and operating systems issued a purported prescription using the physician's electronic signature. The prescription was then directed to one of several RX Limited pharmacies, where it was filled and shipped to the customer using a commercial interstate carrier or USPS.

18.     During the course of the conspiracy, RX Limited physicians approved almost all of the RX Limited orders presented to them. From in or about May 2004, the exact date being unknown to the grand jury, until in or about December 2012, defendants and their co-conspirators generated sales of prescription drugs in excess of $200 million through RX Limited's order process, resulting in the distribution and dispensing of at least 3 million orders of prescription drugs to customers in Minnesota and every other State.

19.     Based on the number of drug orders authorized by each RX Limited physician, the location of RX Limited's customers, and the location of the respective authorizing RX Limited physician for each approved order, the owners of and pharmacists employed by RX Limited fulfillment pharmacies who were involved in the filling of RX Limited customer drug orders, including EYAD MAHROUQ, knew that RX Limited physicians did not have bona fide doctor-patient relationships with RX Limited's customers and that the purported prescriptions were not issued for a legitimate medical purpose and not within the usual course of professional practice.

20.     The defendants and their co-conspirators operated RX Limited under various business names, including AllAmericanRX, RX Partners, Top Rx Partners, CartAdmin, Alpha Net Trading, Vanguard, and other names known and unknown to the grand jury. Defendants and their co-conspirators used numerous aliases when interacting with RX Limited physicians and

U.S. v. Alon Berkman, et al.

pharmacies, and with various other entities, including shipping companies, banks, telephone companies, and credit card processing companies, in order to mask the true ownership and illegal operation of RX Limited, and, at various times during the conspiracy, intentionally misrepresented the nature of RX Limited's business to secure the services of such companies. Defendants and their co-conspirators also misrepresented the nature of RX Limited's business to the National Association of Boards of Pharmacy's VIPPS program in an attempt to get VIPPS approval for some of RX Limited's websites.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, defendants and their co-conspirators committed the following overt acts, among others, in Minnesota and elsewhere:

21.    On or about August 5, 2005, ELIAS KARKALAS signed a physician contract with AllAmericanRX, in connection with his employment by RX Limited.

22.    On or about December 27, 2005, ONOCHIE AGHAEGBUNA received a $1,024 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

23.    On or about March 31, 2006, using the e-mail account allenberkman@hotmail.com, ALON BERKMAN e-mailed a credit card merchant processor and stated "I have an online pharmacy business."

24.    On or about November 30, 2007, ELIAS KARKALAS received a $7,755 wire transfer into his Upper Merion Family Practice, P.C., bank account from a bank account in Hong Kong controlled by RX Limited co-conspirators.

25.    On or about January 9, 2008, using the e-mail account ron_oz11@hotmail.com, MORAN OZ e-mailed the owner of an RX Limited fulfillment pharmacy and told the owner "its not worth it" to apply for VIPPS certification.

U.S. v. Alon Berkman, et al.

26.    On or about June 13, 2008, BABUBHAI PATEL forwarded an e-mail to a co-conspirator from a representative of a merchant credit card processor, in which the representative stated that merchants selling prescription drugs needed to have a VIPPS certificate.

27.    On or about August 27, 2008, PRABHAKARA RAO TUMPATI authorized a sham prescription for the dispensing and distribution of Fioricet or its generic equivalent to an RX Limited customer, an undercover investigator in Minnesota, with whom he did not have a bona fide doctor-patient relationship.

28.    On or about December 2, 2008, ELIAS KARKALAS authorized a sham prescription for the dispensing and distribution of Fioricet or its generic equivalent to an RX Limited customer, an undercover investigator in Minnesota, with whom he did not have a bona fide doctor-patient relationship, and who stated on the submitted customer questionnaire that the Fioricet was being ordered to treat knee pain.

29.    On or about January 29, 2009, SHAI REUVEN received an $11,000 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

30.    On or about January 29, 2009, JONATHAN WALL received a $5,355 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

31.    On or about March 23, 2009, using the e-mail account hatfield.wayne@gmail.com, JONATHAN WALL said to a prospective pharmacy recruiter about new RX Limited fulfillment pharmacies "[o]nce they see the money coming in, they will want more Im [sic] sure."

32.    On or about March 30, 2009, using the e-mail account allenberkman@hotmail.com, ALON BERKMAN e-mailed a co-conspirator and forwarded a list of Michigan pharmacies received from BABUBHAI PATEL that required websites and telephone numbers in order to request VIPPS certification.

U.S. v. Alon Berkman, et al.

33.     On or about April 1, 2009, JONATHAN WALL received a $3,500 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

34.     On or about April 14, 2009, BABUBHAI PATEL received a $3,660 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

35.     On or about April 14, 2009, ALON BERKMAN received a $16,877.75 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

36.     On or about April 14, 2009, MORAN OZ received a $16,877.75 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

37.     On or about April 17, 2009, ONOCHIE AGHAEGBUNA received a $2,402 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

38.     On or about April 17, 2009, PRABHAKARA RAO TUMPATI received a $5,692 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

39.     On or about July 1, 2009, using the e-mail account ron_oz11@hotmail.com, MORAN OZ sent an e-mail to the owner of an RX Limited dispensing pharmacy and told the owner there would be days his pharmacy filled 400 to 500 orders.

40.     On or about November 18, 2009, using the e-mail account michaelross.server73@gmail.com, SHAI REUVEN, requested from a co-conspirator a detailed daily list of merchant account transactions handled by an Israeli merchant processor.

41.     On or about July 15, 2010, ONOCHIE AGHAEGBUNA authorized a sham prescription for the dispensing and distribution of Fioricet or its generic equivalent to an RX Limited customer, an undercover investigator in Minnesota, with whom he did not have a bona fide doctor-patient relationship.

42.     On or about September 9, 2010, EYAD MAHROUQ dispensed generic Fioricet to an RX Limited customer, an undercover investigator in Minnesota, knowing the order had

<u>U.S. v. Alon Berkman, et al.</u>

been authorized without a valid prescription by a physician who did not have a bona fide doctor-patient relationship with the customer.

43.     On or about September 17, 2010, EYAD MAHROUQ received a $33,787.24 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

44.     On or about January 11, 2011, PRABHAKARA RAO TUMPATI e-mailed an RX Limited co-conspirator and attached a National RX Partners contract electronically signed by an RX Limited physician that TUMPATI had recruited, and told the co-conspirator that the new physician "will be one of the physicians I provided . . . and will be compensated as per our agreement of 2 dollars to the physician and 1 dollar per order to me."

45.     On or about February 18, 2011, PRABHAKARA RAO TUMPATI received a $10,854 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

46.     On or about March 31, 2011, using the e-mail account noxy20904@gmail.com, ONOCHIE AGHAEGBUNA sent an e-mail to an RX Limited associate indicating that RX Limited's order processing website was not working properly and had been "down" for days.

47.     On or about May 5, 2011, BABUBHAI PATEL spoke by telephone with a co-conspirator about financial arrangements to establish new RX Limited dispensing pharmacies, and informed the co-conspirator that pharmacists were taking a "risk" because in part, the "DEA" had started "watching."

48.     In or about July 2011, using the e-mail account will.morrissi@yahoo.com, OMER BEZALEL, corresponded by e-mail with a merchant processing broker regarding RX Limited's websites, including total-pills.com.

49.     On or about July 27, 2011, OMER BEZALEL and LACHLAN SCOTT MCCONNELL spoke by telephone and discussed plans to have couriers pick up drug orders

U.S. v. Alon Berkman, et al.

from RX Limited fulfillment pharmacies in vehicles with large trunks so that law enforcement would be unable to see prescription drug packages and thus not have probable cause to search the vehicle.

50.     On or about August 9, 2011, OMER BEZALEL and LACHLAN SCOTT MCCONNELL spoke by telephone and discussed RX Limited's fraudulent efforts to obtain VIPPS approval for RX Limited's marketing websites.

51.     On or about August 11, 2011, LACHLAN SCOTT MCCONNELL met a co-conspirator at an office building in Miami Gardens, Florida, and collected documents and other materials related to RX Limited's operations.

52.     On or about October 5, 2011, EYAD MAHROUQ dispensed Tramadol to an RX Limited customer in Minnesota, knowing the order had been authorized without a valid prescription by a physician who did not have a bona fide doctor-patient relationship with the customer, and knowing that the customer indicated on the submitted questionnaire that her personal physician was not aware she was requesting the medication.

53.     On or about October 19, 2011, after learning that El Rancho Pharmacy, in Dallas, Texas, had been searched by the United States Drug Enforcement Administration ("DEA"), OMER BEZALEL spoke by telephone with a co-conspirator whose job was to pick up packages of drugs at El Rancho Pharmacy and deposit them in mail receptacles, and instructed the co-conspirator to get rid of evidence related to RX Limited.

54.     On or about January 20, 2012, ELIAS KARKALAS received a $13,992.50 wire transfer from a bank account in Hong Kong controlled by RX Limited co-conspirators.

55.     On or about April 16, 2012, SHAI REUVEN spoke by telephone with a co-conspirator known to the grand jury, and discussed, among other things, having customer drug orders processed in Philippine currency.

U.S. v. Alon Berkman, et al.

56.    On or about May 25, 2012, ELIAS KARKALAS authorized a sham prescription for the dispensing and distribution of Fioricet or its generic equivalent to an RX Limited customer, an undercover investigator in Minnesota, with whom he did not have a bona fide doctor-patient relationship, and who stated on the submitted customer questionnaire that the Fioricet was being ordered to treat hemorrhoids.

57.    Defendants and their co-conspirators, as described in the chart below, unlawfully caused to be dispensed, and aided the distribution of, the prescription drugs listed below, from an RX Limited pharmacy located outside Minnesota, to an undercover law enforcement investigator in Minnesota who, on or about the dates listed below, posed as an RX Limited customer and completed RX Limited's customer order form by accessing the websites and customer service telephone number listed below, without having face-to-face, telephonic, or electronic-mail contact with an RX Limited physician:

| DATE | PRESCRIPTION DRUG DISPENSED | WEBSITE OR TELEPHONE NUMBER | DISPENSING PHARMACY LOCATION |
|------|------|------|------|
| 12/02/2008 | 90 Fioricet tablets | www.allpharmmeds.com | Oshkosh, Wisconsin |
| 03/18/2010 | 90 generic Fioricet tablets | www.buymedscheap.com | Oshkosh, Wisconsin |
| 03/18/2010 | 90 generic Fioricet tablets | www.my-online-drugstore.com | Chicora, Pennsylvania |
| 07/15/2010 | 90 generic Fioricet tablets | www.preapprovedrx.com | Oshkosh, Wisconsin |
| 09/02/2010 | 89 Tramadol tablets | www.matrixmeds.com | Mobile, Alabama |
| 09/09/2010 | 90 generic Fioricet tablets | www.your-pills.com | Dallas, Texas |
| 11/22/2011 | 30 generic Fioricet tablets | www.speedyrxdrugs.com | Hellertown, Pennsylvania |
| 01/06/2012 | 30 Fioricet tablets | www.123onlinepharmacy.com | Easton, Pennsylvania |
| 01/19/2012 | 90 generic Fioricet tablets | www.cpropecia.com | Elmhurst, New York |
| 02/24/2012 | 91 generic Fioricet tablets | 801-742-8160 | Kissimmee, Florida |
| 03/15/2012 | 91 generic Fioricet tablets | 801-742-8160 | Chapmanville, West Virginia |
| 03/15/2012 | 180 Tramadol tablets | 801-742-8160 | Jacksonville, Florida |
| 05/25/2012 | 90 Fioricet tablets | www.fioricetdosage.com | Elmhurst, New York |
| 09/14/2012 | 90 generic Fioricet tablets | www.your-pills.com | Elmhurst, New York |

U.S. v. Alon Berkman, et al.

58.      Defendants and their co-conspirators, as described in the chart below, unlawfully

caused to be dispensed, and aided the distribution of, the prescription drugs listed below, from an

RX Limited pharmacy located outside Minnesota, to a customer in Minnesota who, on or about

the dates listed below, placed a drug order by accessing an RX Limited website or customer

service telephone number, without having face-to-face, telephonic, or electronic-mail contact

with an RX Limited physician:

| DATE | CUSTOMER | PRESCRIPTION DRUG DISPENSED | DISPENSING PHARMACY LOCATION |
|------|----------|-----------------------------|------------------------------|
| 08/05/2011 | V.N. | Tramadol | Dallas, Texas |
| 08/30/2011 | B.S. | Tramadol | Dallas, Texas |
| 10/05/2011 | C.T. | Tramadol | Dallas, Texas |
| 10/05/2011 | D.M. | Tramadol | Dallas, Texas |
| 10/24/2011 | S.E. | Fioricet or generic Fioricet | Hellertown, Pennsylvania |
| 11/07/2011 | E.F. | Tramadol and Fioricet | Dunellen, New Jersey |
| 03/12/2012 | B.S. | Tramadol | Chapmanville, West Virginia |
| 03/15/2012 | B.L. | Tramadol | Orlando, Florida |
| 07/23/2012 | V.N. | Tramadol | Jacksonville, Florida |

59.      From at least in or about May 2004, the exact start date being unknown, to at least

in or about December 2012, defendants and their co-conspirators caused payments to be made to

FedEx and a USPS contractor from bank accounts controlled by RX Limited associates known to

the grand jury.

60.      From at least in or about May 2004, the exact start date being unknown, to at least

in or about December 2012, defendants and their co-conspirators caused payments to be made to

RX Limited physicians, RX Limited pharmacies, and RX Limited marketing affiliates from bank

accounts in Hong Kong and elsewhere controlled by RX Limited associates known to the grand

jury.

61.      At various times during the conspiracy, defendants and their co-conspirators,

attempting to obtain VIPPS approval for RX Limited, provided to VIPPS multiple websites,

under different entity names, with the intent that at least one of the websites would conceal the

- 18 -

U.S. v. Alon Berkman, et al.

illegal nature of RX Limited's business model and gain VIPPS approval.

62.    At various times during the conspiracy, defendants and their co-conspirators provided various merchant processing companies incomplete and misleading information regarding RX Limited's websites and business model to obtain services necessary to process RX Limited's customers' credit card transactions.

63.    Defendants employed deceptive tactics to obtain shipping services from USPS and to regain shipping services after FedEx terminated RX Limited's national shipping account on June 15, 2011, such as creating new shipping accounts through newly created companies and bank accounts.   Defendants also employed couriers to retrieve prescription drug orders from RX Limited's fulfillment pharmacies and to deposit them in small quantities into numerous carrier drop boxes for shipment.   These tactics were used in order to prevent the carriers from becoming aware that they were shipping large quantities of prescription drugs for an Internet pharmacy organization that was unapproved by VIPPS.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE NOTICE

1.    The allegations contained in Count 1 of this Indictment ("Count One") are hereby realleged and incorporated by reference, as if fully set forth herein, for the purpose of alleging forfeiture to the United States pursuant to Title 21, United States Code, Section 334, and Title 28, United States Code, Section 2461(c).

2.    Pursuant to Federal Rule of Criminal Procedure 32.2, the defendants are hereby notified that if convicted of the offense alleged in Count One, each defendant convicted shall forfeit to the United States pursuant to Title 21, United States Code, Section 334 and Title 28, United States Code, Section 2461(c), quantities of drugs which were introduced into interstate commerce in violation of Title 21, United States Code,

Sections 331, 333(a), and 353(b), during the period May 1, 2004, through December 31, 2012.

3.      If any of the property subject to forfeiture, as a result of any act or omission of any of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture, in the form of a money judgment.

All in accordance with Title 21, United States Code, Section 334; Title 28, United States Code, Section 2461(c); Rule 32.2(a), Federal Rules of Criminal Procedure.

## COUNTS 2 THROUGH 23
### (Introduction of Misbranded Drugs into Interstate Commerce)

1.      The grand jury incorporates paragraphs 1 through 63 of Count One as if fully set forth herein.

2.      On or about the dates listed below, in the District of Minnesota and elsewhere, defendants herein,

ALON BERKMAN (Counts 2-23),
MORAN OZ (Counts 2-23),
BABUBHAI PATEL (Counts 2-23),
JONATHAN WALL (Counts 2-23),
SHAI REUVEN (Counts 3-23),
LACHLAN SCOTT MCCONNELL (Counts 3-13),
OMER BEZALEL (Counts 8-23),
ELIAS KARKALAS (Counts 2, 3, 8, 9, 15, 16, 20, 21, and 23),
ONOCHIE AGHAEGBUNA (Count 5), and
EYAD MAHROUQ (Counts 7-11),

U.S. v. Alon Berkman, et al.

and others known and unknown to the grand jury, with the intent to defraud and mislead,

introduced and delivered for introduction into interstate commerce and caused to be introduced

and delivered for introduction into interstate commerce, as charged in the chart below, each such

instance being a separate count of the Indictment, drugs that were misbranded within the

meaning of Title 21, United States Code, Section 353(b), in that the drug was a prescription drug

that was dispensed without a valid prescription of a practitioner licensed by law to administer

such drugs:

| COUNT | DEFENDANTS CHARGED | DATE | PRESCRIPTION DRUG DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 2 | BERKMAN; OZ; PATEL; WALL; KARKALAS | 12/02/2008 | 90 Fioricet tablets distributed and dispensed from Wisconsin to an undercover investigator in Minnesota |
| 3 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; KARKALAS | 03/18/2010 | 90 generic Fioricet tablets distributed and dispensed from Wisconsin to an undercover investigator in Minnesota |
| 4 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL | 03/18/2010 | 90 generic Fioricet tablets distributed and dispensed from Pennsylvania to an undercover investigator in Minnesota |
| 5 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL; MCCONNELL; AGHAEGBUNA | 07/15/2010 | 90 generic Fioricet tablets distributed and dispensed from Wisconsin to an undercover investigator in Minnesota |
| 6 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL | 09/02/2010 | 89 Tramadol tablets distributed and dispensed from Alabama to an undercover investigator in Minnesota |
| 7 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; MAHROUQ | 09/09/2010 | 90 generic Fioricet tablets distributed and dispensed from Texas to an undercover investigator in Minnesota |
| 8 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; BEZALEL; KARKALAS; MAHROUQ | 08/05/2011 | 90 Tramadol tablets distributed and dispensed from Texas to customer V.N. in Minnesota |
| 9 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; BEZALEL; KARKALAS; MAHROUQ | 08/30/2011 | 180 Tramadol tablets distributed and dispensed from Texas to customer B.S. in Minnesota |
| 10 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; BEZALEL; MAHROUQ | 10/05/2011 | 180 Tramadol tablets distributed and dispensed from Texas to customer C.T. in Minnesota |
| 11 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; BEZALEL; MAHROUQ | 10/05/2011 | 90 Tramadol tablets distributed and dispensed from Texas to customer D.M. in Minnesota |

U.S. v. Alon Berkman, et al.

| COUNT | DEFENDANTS CHARGED | DATE | PRESCRIPTION DRUG DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 12 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; BEZALEL | 10/24/2011 | Fioricet tablets distributed and dispensed from Pennsylvania to customer S.E. in Minnesota |
| 13 | BERKMAN; OZ; PATEL; WALL; REUVEN; MCCONNELL; BEZALEL | 11/22/2011 | 30 generic Fioricet tablets distributed and dispensed from Pennsylvania to an undercover investigator in Minnesota |
| 14 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL | 01/06/2012 | 30 Fioricet tablets distributed and dispensed from Pennsylvania to an undercover investigator in Minneapolis, Minnesota |
| 15 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL; KARKALAS | 01/19/2012 | 90 generic Fioricet tablets distributed and dispensed from New York to an undercover investigator in Minnesota |
| 16 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL; KARKALAS | 02/24/2012 | 91 generic Fioricet tablets distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 17 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL | 03/12/2012 | 180 Tramadol tablets distributed and dispensed from West Virginia to customer B.S. in Minnesota |
| 18 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL | 03/15/2012 | 180 Tramadol tablets distributed and dispensed from Florida to customer B.L. in Minnesota |
| 19 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL | 03/15/2012 | 91 generic Fioricet tablets distributed and dispensed from West Virginia to an undercover investigator in Minnesota |
| 20 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL; KARKALAS | 03/15/2012 | 180 Tramadol tablets distributed and dispensed from Florida to an undercover investigator in Minnesota |
| 21 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL; KARKALAS | 05/25/2012 | 90 generic Fioricet tablets distributed and dispensed from New York to an undercover investigator in Minnesota |
| 22 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL | 07/23/2012 | 90 Tramadol tablets distributed and dispensed from Florida to customer V.N. in Minnesota |
| 23 | BERKMAN; OZ; PATEL; WALL; REUVEN; BEZALEL; KARKALAS | 09/14/2012 | 90 generic Fioricet tablets distributed and dispensed from New York to an undercover investigator in Minnesota |

All in violation of Title 21, United States Code, Sections 331(a), 333(a)(2), and

353(b)(1); and Title 18, United States Code, Section 2.

## FORFEITURE NOTICE

1.      The allegations contained in Counts 2 through 23 of this Indictment are

hereby realleged and incorporated by reference, as if fully set forth herein, for the

U.S. v. Alon Berkman, et al.

purpose of alleging forfeiture to the United States pursuant to Title 21, United States

Code, Section 334, and Title 28, United States Code, Section 2461(c).

      2.      Pursuant to Federal Rule of Criminal Procedure 32.2, the defendants are

hereby notified that if convicted of any of the offenses alleged in Counts 2 through 23,

each defendant convicted shall forfeit to the United States pursuant to Title 21, United

States Code, Section 334 and Title 28, United States Code, Section 2461(c), quantities of

drugs which were introduced into interstate commerce in violation of Title 21, United

States Code, Sections 331, 333(a), and 353(b).

      3.      If any of the property subject to forfeiture, as a result of any act or omission of

any of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been

transferred or sold to, or deposited with, a third party, (c) has been placed beyond the

jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been

commingled with other property which cannot be divided without difficulty, it is the intent of

the United States, pursuant to Title 21, United States Code, Section 853(p), incorporated by

reference in Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

property of the defendants up to the value of the property subject to forfeiture, in the form of

a money judgment.

      All in accordance with Title 21, United States Code, Section 334; Title 28, United States

Code, Section 2461(c); Rule 32.2(a), Federal Rules of Criminal Procedure.

## COUNT 24
### (Conspiracy to Commit Mail Fraud and Wire Fraud)

      1.      The grand jury incorporates paragraphs 1 through 63 of Count One as if fully set

forth herein.

U.S. v. Alon Berkman, et al.

    2.      Beginning in or about May 2004, the exact date being unknown, through in or about December 2012, in the District of Minnesota, and elsewhere, defendants herein,

**ALON BERKMAN,**
**MORAN OZ,**
**BABUBHAI PATEL,**
**LACHLAN SCOTT MCCONNELL,**
**OMER BEZALEL,**
**ELIAS KARKALAS,**
**PRABHAKARA RAO TUMPATI,**
**ONOCHIE AGHAEGBUNA, and**
**EYAD MAHROUQ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate and agree together and with others, known and unknown to the grand jury, to commit certain offenses against the United States, that is:

    (a)  to devise, and intend to devise, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and deposit and cause to be deposited matter to be sent and delivered by the United States Postal Service and commercial interstate carrier, and knowingly cause to be delivered certain mail matter by the United States Postal Service and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341; and

    (b)  to devise and intend to devise, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmit and cause to be transmitted certain wire communications in interstate commerce, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

- 24 -

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for defendants and their co-conspirators to enrich themselves by obtaining money by unlawfully offering for sale and selling prescription drugs to consumers in the United States by making materially false representations, and omitting and concealing material facts concerning, among other things, the validity of prescriptions that were issued outside of the usual course of professional medical practice and without a legitimate medical purpose.

## MANNER AND MEANS OF THE CONSPIRACY

4.      The grand jury incorporates paragraphs 12 through 20 of Count One as if fully set forth herein.

5.      It was further part of the conspiracy that, even after RX Limited had been informed by multiple entities and organizations, such as VIPPS and FedEx, that it was unlawfully offering for sale and shipping controlled substances, RX Limited continued to advertise falsely on its marketing websites that it did not sell controlled substances.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE NOTICE

1.      The allegations contained in Count 24 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of the offense in violation of Title 18, United States Code, Section 1349 set forth in Count 24 of this Indictment, the defendants ALON BERKMAN, MORAN OZ, BABUBHAI PATEL, LACHLAN SCOTT MCCONNELL, OMER BEZALEL, ELIAS KARKALAS, PRABHAKARA RAO TUMPATI, ONOCHIE

U.S. v. Alon Berkman, et al.

AGHAEGBUNA, and EYAD MAHROUQ shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c):

    a.    any property, real or personal, that constitutes or is derived from proceeds traceable to the offense; and

    b.    a sum of money equal to the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

    3.    If any of the property subject to forfeiture, as a result of any act or omission of any defendant (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## COUNTS 25 THROUGH 46
### (Mail Fraud)

    1.    The grand jury incorporates paragraphs 1 through 63 of Count One and paragraphs 1 through 5 of Count 24 ("Count Twenty Four") as if fully set forth herein.

    2.    Beginning in or about May 2004, the exact date being unknown, through in or about December 2012, in the District of Minnesota and elsewhere, defendants herein,

**ALON BERKMAN (Counts 25-46),**

- 26 -

**MORAN OZ (Counts 25-46),**
**BABUBHAI PATEL (Counts 25-46),**
**LACHLAN SCOTT MCCONNELL (Counts 26-36),**
**OMER BEZALEL (Counts 31-46),**
**ELIAS KARKALAS (Counts 25, 26, 31, 32, 38, 39, 43, 44, and 46),**
**ONOCHIE AGHAEGBUNA (Count 28), and**
**EYAD MAHROUQ (Counts 30-34),**

aiding and abetting each other and others known and unknown to the grand jury, knowingly

devised, and intended to devise, a scheme and artifice to defraud and to obtain money and

property by means of materially false and fraudulent pretenses, representations, and promises,

knowing that they were false and fraudulent when made, and deposited and caused to be

deposited matter to be sent and delivered by the United States Postal Service and commercial

interstate carrier, and knowingly caused to be delivered certain mail matter by the United States

Postal Service and commercial interstate carrier, according to the directions thereon, for the

purpose of executing the scheme and artifice to defraud.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants to enrich

themselves by obtaining money by illegally offering for sale and selling prescription drugs to

consumers in the United States by making materially false representations, and omitting and

concealing material facts concerning, among other things, the validity of prescriptions that were

issued outside the usual course of professional practice and without a legitimate medical purpose.

## THE SCHEME AND ARTIFICE

4.      The grand jury incorporates paragraphs 1 through 63 of Count One and

paragraphs 1 through 5 of Count Twenty Four as if fully set forth herein.

## THE MAIL COMMUNICATIONS

5.      On or about the following dates, in the District of Minnesota and elsewhere, the

defendants named below, for the purpose of executing the scheme described above, and

- 27 -

U.S. v. Alon Berkman, et al.

attempting to do so, knowingly caused to be delivered to the District of Minnesota, by the United

States Postal Service and commercial interstate carrier, according to the directions thereon, from

outside Minnesota, the following items, each delivery constituting a separate count:

| COUNT | DEFENDANTS CHARGED | DATE | DESCRIPTION |
|---|---|---|---|
| 25 | BERKMAN; OZ; PATEL; KARKALAS | 12/02/2008 | 90 Fioricet tablets distributed and dispensed from Wisconsin to an undercover investigator in Minnesota |
| 26 | BERKMAN; OZ; PATEL; MCCONNELL; KARKALAS | 03/18/2010 | 90 generic Fioricet tablets distributed and dispensed from Wisconsin to an undercover investigator in Minnesota |
| 27 | BERKMAN; OZ; PATEL; MCCONNELL | 03/18/2010 | 90 generic Fioricet tablets distributed and dispensed from Pennsylvania to an undercover investigator in Minnesota |
| 28 | BERKMAN; OZ; PATEL; MCCONNELL; AGHAEGBUNA | 07/15/2010 | 90 generic Fioricet tablets distributed and dispensed from Wisconsin to an undercover investigator in Minnesota |
| 29 | BERKMAN; OZ; PATEL; MCCONNELL | 09/02/2010 | 89 Tramadol tablets distributed and dispensed from Alabama to an undercover investigator in Minnesota |
| 30 | BERKMAN; OZ; PATEL; MCCONNELL; MAHROUQ | 09/09/2010 | 90 generic Fioricet tablets distributed and dispensed from El Rancho Pharmacy, in Texas, to an undercover investigator in Minnesota |
| 31 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL; KARKALAS; MAHROUQ | 08/05/2011 | 90 Tramadol tablets distributed and dispensed from El Rancho Pharmacy, in Texas, to customer V.N. in Minnesota |
| 32 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL; KARKALAS; MAHROUQ | 08/30/2011 | 180 Tramadol tablets distributed and dispensed from El Rancho Pharmacy, in Texas, to customer B.S. in Minnesota |
| 33 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL; MAHROUQ | 10/05/2011 | 180 Tramadol tablets distributed and dispensed from El Rancho Pharmacy, in Texas, to customer C.T. in Minnesota |
| 34 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL; MAHROUQ | 10/05/2011 | 90 Tramadol tablets distributed and dispensed from, El Rancho Pharmacy, in Texas, to customer D.M. in Minnesota |
| 35 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL | 10/24/2011 | Fioricet tablets distributed and dispensed from Pennsylvania to customer S.E. in Minnesota. |
| 36 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL | 11/22/2011 | 30 generic Fioricet tablets distributed and dispensed from Pennsylvania to an undercover investigator in Minnesota |
| 37 | BERKMAN; OZ; PATEL; BEZALEL | 01/06/2012 | 30 Fioricet tablets distributed and dispensed from Pennsylvania to an undercover investigator in Minnesota |

U.S. v. Alon Berkman, et al.

| COUNT | DEFENDANTS CHARGED | DATE | DESCRIPTION |
|---|---|---|---|
| 38 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 01/19/2012 | 90 generic Fioricet tablets distributed and dispensed from New York to an undercover investigator in Minnesota |
| 39 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 02/24/2012 | 91 generic Fioricet tablets distributed and dispensed to an undercover investigator in Minnesota |
| 40 | BERKMAN; OZ; PATEL; BEZALEL | 03/12/2012 | 180 Tramadol tablets distributed and dispensed to customer B.S. in Minnesota |
| 41 | BERKMAN; OZ; PATEL; BEZALEL | 03/15/2012 | 180 Tramadol tablets distributed and dispensed to customer B.L. in Minnesota |
| 42 | BERKMAN; OZ; PATEL; BEZALEL | 03/15/2012 | 91 generic Fioricet tablets distributed and dispensed from Florida to an undercover investigator in Minnesota |
| 43 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 03/15/2012 | 180 Tramadol tablets distributed and dispensed from West Virginia to an undercover investigator in Minnesota |
| 44 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 05/25/2012 | 90 generic Fioricet tablets distributed and dispensed from New York to an undercover investigator in Minnesota |
| 45 | BERKMAN; OZ; PATEL; BEZALEL | 07/23/2012 | 90 Tramadol tablets distributed and dispensed from Florida to customer V.N. in Minnesota |
| 46 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 09/14/2012 | 90 generic Fioricet tablets distributed and dispensed from New York to an undercover investigator in Minnesota |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE NOTICE

1.      The allegations contained in Counts 25 through 46 of this Indictment are

hereby realleged and incorporated by reference for the purpose of alleging forfeiture

pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).

2.      Upon conviction of the offenses in violation of Title 18, United States Code,

Section 1341 set forth in Counts 25 through 46 of this Indictment, the defendants ALON

BERKMAN, MORAN OZ, BABUBHAI PATEL, LACHLAN SCOTT MCCONNELL,

OMER BEZALEL, ELIAS KARKALAS, ONOCHIE AGHAEGBUNA, and EYAD

U.S. v. Alon Berkman, et al.

MAHROUQ shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c):

      a.      any property, real or personal, that constitutes or is derived from proceeds traceable to the offenses.

      b.      a sum of money equal to the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

      3.      If any of the property subject to forfeiture, as a result of any act or omission of any of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

      All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

### COUNTS 47 THROUGH 60
#### (Wire Fraud)

      1.      The grand jury incorporates paragraphs 1 through 63 of Count One and paragraphs 1 through 5 of Count Twenty Four as if fully set forth herein.

      2.      Beginning in or about May 2004, the exact date being unknown, through in or about December 2012, in the District of Minnesota and elsewhere, defendants herein,

**ALON BERKMAN (Counts 47-60),**
**MORAN OZ (Counts 47-60),**
**BABUBHAI PATEL (Counts 47-60),**

- 30 -

U.S. v. Alon Berkman, et al.

**LACHLAN SCOTT MCCONNELL (Counts 47-52),**
**OMER BEZALEL (Counts 52-60),**
**ELIAS KARKALAS (Counts 47, 54, 55, 57, 58, and 60),**
**ONOCHIE AGHAEGBUNA (Count 49), and**
**EYAD MAHROUQ (Count 51),**

aiding and abetting each other and others known and unknown to the grand jury, devised and

participated in a scheme and artifice to defraud online prescription drug customers to obtain

money and property by means of false and fraudulent pretenses, representations, and promises,

knowing that they were false and fraudulent when made, and for the purpose of executing such

scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of

wire communications in interstate commerce, any writings, signs, signals, pictures, and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants to unlawfully

enrich themselves by obtaining money by illegally offering for sale and selling controlled

substance prescription drugs to consumers in the United States by making materially false

representations, and omitting and concealing material facts concerning, among other things, the

validity of prescriptions that were issued outside the usual course of professional practice and

without a legitimate medical purpose.

## THE SCHEME AND ARTIFICE

4.      The grand jury incorporates paragraphs 1 through 63 of Count One and

paragraphs 1 through 5 of Count Twenty Four as if fully set forth herein.

## THE WIRE COMMUNICATIONS

5.      On or about the following dates, in the District of Minnesota and elsewhere, the

defendants named below, for the purpose of executing the scheme described above, and

attempting to do so, did knowingly cause to be transmitted to the District of Minnesota, from

outside Minnesota, by means of wire communications in interstate commerce, certain writings,

U.S. v. Alon Berkman, et al.

signs, signals, and sounds identified below:

| COUNT | DEFENDANTS CHARGED | DATE | ORIGIN | DESTINATION | DESCRIPTION |
|---|---|---|---|---|---|
| 47 | BERKMAN; OZ; PATEL; MCCONNELL; KARKALAS | 03/18/2010 | www.buymedscheap.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 48 | BERKMAN; OZ; PATEL; MCCONNELL | 03/18/2010 | www.my-online-drugstore.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 49 | BERKMAN; OZ; PATEL; MCCONNELL; AGHAEGBUNA | 07/15/2010 | www.preapprovedrx.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 50 | BERKMAN; OZ; PATEL; MCCONNELL | 09/02/2010 | www.matrixmeds.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 51 | BERKMAN; OZ; PATEL; MCCONNELL; MAHROUQ | 09/09/2010 | www.your-pills.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 52 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL | 11/22/2011 | www.speedyrxdrugs.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 53 | BERKMAN; OZ; PATEL; BEZALEL | 01/06/2012 | www.123onlinepharmacy.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 54 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 01/19/2012 | www.epropecia.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 55 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 02/24/2012 | RX Limited customer service representative's telephone number 801-742-8160 | Minnesota | Telephone call between an undercover investigator in Minnesota and an RX Limited customer service representative located outside Minnesota |
| 56 | BERKMAN; OZ; PATEL; BEZALEL | 03/15/2012 | e-mail server associated with marketing website Pillcobrausa.com | Minnesota | Order confirmation e-mail received by RX Limited customer B.L. in Minnesota |

U.S. v. Alon Berkman, et al.

| 57 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 03/15/2012 | RX Limited customer service representative's telephone number 801-742-8160 | Minnesota | Telephone call between an undercover investigator in Minnesota and an RX Limited customer service representative located outside Minnesota |
|----|------|------|------|------|------|
| 58 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 05/25/2012 | www.fioricetdosage.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |
| 59 | BERKMAN; OZ; PATEL; BEZALEL | 07/23/2012 | e-mail server associated with marketing website Tramadolovernight.com | Minnesota | Order confirmation e-mail received by RX Limited customer V.N. in Minnesota |
| 60 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 09/14/2012 | www.your-pills.com | Various locations, including Minnesota | Marketing website accessed by an undercover investigator in Minnesota |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE NOTICE

1.        The allegations contained in Counts 47 through 60 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.        Upon conviction of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts 47 through 60 of this Indictment, the defendants, ALON BERKMAN, MORAN OZ, BABUBHAI PATEL, LACHLAN SCOTT MCCONNELL, OMER BEZALEL, ELIAS KARKALAS, ONOCHIE AGHAEGBUNA, and EYAD MAHROUQ, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c):

a.        any property, real or personal, that constitutes or is derived from proceeds traceable to the offenses.

b.        a sum of money equal to the total amount of money involved in each offense for which the defendant is convicted.  If more than one defendant is convicted of an offense,

U.S. v. Alon Berkman, et al.

the defendants so convicted are jointly and severally liable for the amount involved in such offense.

3.      If any of the property subject to forfeiture, as a result of any act or omission of any of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

**COUNTS 61 THROUGH 72**
**(Unlawful distribution and dispensing of controlled substances)**

1.      The grand jury incorporates paragraphs 1 through 63 of Count One as if fully set forth herein.

2.      Under the Controlled Substances Act ("CSA"), Title 21, United States Code, Section 801, et seq., the United States Drug Enforcement Administration ("DEA") regulates certain pharmaceutical drugs that are classified as controlled substances because of their potential for abuse or dependence, their accepted medical use, and their accepted safety for use under medical supervision. Controlled substances are classified in five schedules; Schedule I contains the most dangerous drugs that have the highest potential for abuse or dependence, and Schedule V contains the least dangerous controlled substances. Abuse of Schedule III drugs may lead to moderate or low physical dependence or high psychological dependence. 21 U.S.C. § 812(b)(3).

3.      Controlled substances can only be lawfully distributed to individuals with a valid

- 34 -

U.S. v. Alon Berkman, et al.

prescription issued by a physician or other authorized health practitioner, except when dispensed

directly to a patient by the practitioner (other than a pharmacist). 21 U.S.C. § 829.

4.      Title 21, United States Code, Section 821, provides that "[t]he Attorney

General [of the United States] is authorized to promulgate rules and regulations . . . relating to

the registration and control of the manufacture, distribution and dispensing of controlled

substances." All functions vested in the Attorney General by the CSA have been delegated to

the Administrator of the DEA. 28 C.F.R. § 0.100(b). The exercise of this rulemaking authority

resulted in Section 1306.04 of Title 21 of the Code of Federal Regulations, which governs the

issuance of prescriptions for controlled substances and states that every prescription for a

controlled substance "must be issued for a legitimate medical purpose by an individual

practitioner acting in the usual course of his professional practice. The responsibility for the

proper prescribing and dispensing of controlled substances is upon the prescribing practitioner,

but a corresponding responsibility rests with the pharmacist who fills the prescription." A

prescription not meeting this standard is invalid. Anyone who knowingly issues or fills an

invalid prescription "shall be subject to the penalties provided for violations of the law relating to

controlled substances." 21 C.F.R. § 1306.04.

5.      A physician who prescribes a controlled substance for an individual based solely

on that person's responses to a questionnaire which the individual filled out on the Internet,

without ever having examined that individual, is acting outside the usual course of his or her

professional practice, and the prescription is not for a legitimate medical purpose and therefore

invalid.

6.      Fioricet was a prescription drug, containing butalbital, acetaminophen, and

caffeine, and was approved to treat tension headaches. Butalbital, a barbiturate, was a Schedule

III controlled substance under the CSA, and was habit-forming and potentially abusable. 21

- 35 -

U.S. v. Alon Berkman, et al.

C.F.R. § 1308.13.

7.     On or about the dates listed below, in the District of Minnesota and elsewhere,

defendants herein,

**ALON BERKMAN (Counts 61-72),**
**MORAN OZ (Counts 61-72),**
**BABUBHAI PATEL (Counts 61-72),**
**LACHLAN SCOTT MCCONNELL (Counts 62-66),**
**OMER BEZALEL (Counts 66-72), and**
**ELIAS KARKALAS (Counts 61, 62, 68, 69, 71, and 72),**

knowingly and intentionally, distributed and dispensed, and caused to be distributed and

dispensed, a quantity of a controlled substance for other than a legitimate medical purpose and

not in the usual course of professional practice, as charged in the chart below, each such instance

being a separate count of the Indictment:

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|
| 61 | BERKMAN; OZ; PATEL; KARKALAS | 12/02/2008 | 90 pills of Fioricet containing Butalbital distributed and dispensed to an undercover officer in Minneapolis, Minnesota |
| 62 | BERKMAN; OZ; PATEL; MCCONNELL; KARKALAS | 03/18/2010 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 63 | BERKMAN; OZ; PATEL; MCCONNELL | 03/18/2010 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 64 | BERKMAN; OZ; PATEL; MCCONNELL | 07/15/2010 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 65 | BERKMAN; OZ; PATEL; MCCONNELL | 09/09/2010 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 66 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL | 11/22/2011 | 30 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 67 | BERKMAN; OZ; PATEL; BEZALEL | 01/06/2012 | 30 pills of Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |

U.S. v. Alon Berkman, et al.

| COUNT | DEFENDANTS CHARGED | DATE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|-------|--------------------|------|------------------------------------------------|
| 68 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 01/19/2012 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 69 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 02/24/2012 | 91 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 70 | BERKMAN; OZ; PATEL; BEZALEL | 03/15/2012 | 91 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 71 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 05/25/2012 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 72 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 09/14/2012 | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(E); Title 18,

United States Code, Section 2; and Title 21, Code of Federal Regulations, Section 1306.04.

## FORFEITURE NOTICE

1.      The allegations contained in Counts 61 through 72 of this Indictment are hereby

realleged and incorporated by reference for the purpose of alleging forfeiture to the United States

pursuant to Title 21, United States Code, Section 853.

2.      Pursuant to Title 21, United States Code, Section 853, upon conviction of an

offense in violation of Title 21, United States Code, Section 841, the defendants, ALON

BERKMAN, MORAN OZ, BABUBHAI PATEL, LACHLAN SCOTT MCCONNELL, OMER

BEZALEL, and ELIAS KARKALAS, shall forfeit to the United States:

a.      any property constituting, or derived from, any proceeds obtained, directly or

indirectly, as the result of such offenses and any property used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of, the offenses; and

- 37 -

U.S. v. Alon Berkman, et al.

  b.  a sum of money equal to the total amount of money involved in each offense for

which the defendant is convicted.  If more than one defendant is convicted of an offense, the

defendants so convicted are jointly and severally liable for the amount involved in such offense.

  3.  If any of the property subject to forfeiture, as a result of any act or omission of

any of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been

transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction

of the Court, (d) has been substantially diminished in value, or (e) has been commingled with

other property which cannot be divided without difficulty, the United States shall be entitled to

forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

### COUNTS 73 THROUGH 83
**(Unlawful distribution and dispensing of controlled substances)**

  1.  The grand jury incorporates paragraphs 1 through 63 of Count One and

paragraphs 1 through 6 of Counts 61 through 72 as if fully set forth herein.

  2.  Effective April 13, 2009, the Controlled Substances Act (CSA), 21 U.S.C. 801, et

seq., was amended by the Ryan Haight Online Pharmacy Consumer Protection Act (Ryan Haight

Act, Pub. L. No. 110-425, referred to herein as the "Act") to codify what constitutes a valid

prescription as follows:  "a prescription that is issued for a legitimate medical purpose in the

usual course of professional practice by (i) a practitioner who has conducted at least 1 in-person

medical evaluation of the patient; or (ii) a covering practitioner."  21 U.S.C. § 829(e)(2)(A).

The term "in-person medical evaluation" was defined as "a medical evaluation that is conducted

with the patient in the physical presence of the practitioner, without regard to whether portions of

the evaluation are conducted by other health professionals."  21 U.S.C. § 829(e)(2)(B)(i).

  3.  One of the amendments to the CSA made by the Act was that, as of April 13,

2009, no person was permitted to operate as an online pharmacy unless such person was a DEA-

registered pharmacy that obtained from DEA a modification of its registration authorizing it to

operate as an online pharmacy.  21 U.S.C. § 841(h)(1) and (2)(A).

4.      An online pharmacy was defined in the CSA as "a person, entity, or Internet site,

whether in the United States or abroad, that knowingly or intentionally delivers, distributes, or

dispenses, or offers to attempt to deliver, distribute, or dispense, a controlled substance by means

of the Internet."  21 U.S.C. § 802(52)(A).

5.      Another requirement of the CSA as of April 13, 2009, was that every online

pharmacy was required to display certain information on its website, or on a page directly linked

thereto.  The information includes (1) the name and address of the pharmacy as it appeared on

the pharmacy's DEA certificate of registration, as well as its telephone number and email

address; (2) the name, professional degree, and States of licensure of the pharmacist-in-charge,

and a telephone number at which the pharmacist-in-charge can be contacted; (3) the name,

address, telephone number, professional degree, and States of licensure of any practitioner who

has a contractual relationship to provide medical evaluations or issue prescriptions for controlled

substances, through referrals from the website or at the request of the owner or operator of the

website; and (4) the following statement:  "This online pharmacy will only dispense a controlled

substance to a person who has a valid prescription issued for a legitimate medical purpose based

upon a medical relationship with a prescribing practitioner."  21 U.S.C. § 831.

6.      On or about the dates listed below, in the District of Minnesota and elsewhere,

defendants herein,

> **ALON BERKMAN (Counts 73-83),**
> **MORAN OZ (Counts 73-83),**
> **BABUBHAI PATEL (Counts 73-83),**
> **LACHLAN SCOTT MCCONNELL (Counts 73-77),**
> **OMER BEZALEL (Counts 77-83), and**
> **ELIAS KARKALAS (Counts 73, 79, 80, 82, and 83),**

knowingly and intentionally delivered, distributed, and dispensed, and aided and abetted the

delivery, distribution, and dispensing, of controlled substances listed below, by means of the

- 39 -

U.S. v. Alon Berkman, et al.

Internet:  (a) with invalid prescriptions that were issued outside of the usual course of professional practice, and were not for a legitimate medical purpose; (b) by an online pharmacy that was not validly registered with DEA with a modified registration authorizing such activity; and (c) by an online pharmacy that did not display on its website the information required by 21 U.S.C. § 831, each delivery and distribution constituting a separate count:

| COUNT | DEFENDANTS CHARGED | DATE | ASSOCIATED WEBSITE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|---|
| 73 | BERKMAN; OZ; PATEL; MCCONNELL; KARKALAS | 03/18/2010 | www.buymedscheap.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 74 | BERKMAN; OZ; PATEL; MCCONNELL | 03/18/2010 | www.my-online-drugstore.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 75 | BERKMAN; OZ; PATEL; MCCONNELL | 07/15/2010 | www.preapprovedrx.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 76 | BERKMAN; OZ; PATEL; MCCONNELL | 09/09/2010 | www.your-pills.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 77 | BERKMAN; OZ; PATEL; MCCONNELL; BEZALEL | 11/22/2011 | www.speedyrxdrugs.com | 30 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |

U.S. v. Alon Berkman, et al.

| COUNT | DEFENDANTS CHARGED | DATE | ASSOCIATED WEBSITE | CONTROLLED SUBSTANCE DISTRIBUTED AND DISPENSED |
|---|---|---|---|---|
| 78 | BERKMAN; OZ; PATEL; BEZALEL | 01/06/2012 | www.123onlinepharmacy.com | 30 pills of Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 79 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 01/19/2012 | www.epropecia.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 80 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 02/24/2012 | www.speedyrxdrugs.com | 91 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 81 | BERKMAN; OZ; PATEL; BEZALEL | 03/15/2012 | www.speedyrxdrugs.com | 91 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 82 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 05/25/2012 | www.fioricetdosage.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |
| 83 | BERKMAN; OZ; PATEL; BEZALEL; KARKALAS | 09/14/2012 | www.your-pills.com | 90 pills of generic Fioricet containing Butalbital distributed and dispensed to an undercover investigator in Minneapolis, Minnesota |

All in violation of Title 21, United States Code, Sections 841(h)(1), (h)(4), (b)(1)(E), and Title 18, United States Code, Section 2.

U.S. v. Alon Berkman, et al.

## FORFEITURE NOTICE

1.     The allegations contained in Counts 73 through 83 of this Indictment are hereby

realleged and incorporated by reference for the purpose of alleging forfeiture to the United States

pursuant to Title 21, United States Code, Section 853.

2.     Pursuant to Title 21, United States Code, Section 853, upon conviction of an

offense in violation of Title 21, United States Code, Section 841, the defendants, ALON

BERKMAN, MORAN OZ, BABUBHAI PATEL, LACHLAN SCOTT MCCONNELL, OMER

BEZALEL, and ELIAS KARKALAS, shall forfeit to the United States:

a.     any property constituting, or derived from, any proceeds obtained, directly or

indirectly, as the result of such offenses and any property used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of, the offenses; and

b.     a sum of money equal to the total amount of money involved in each offense for

which the defendant is convicted.  If more than one defendant is convicted of an offense, the

defendants so convicted are jointly and severally liable for the amount involved in such offense.

3.     If any of the property subject to forfeiture, as a result of any act or omission of

any of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been

transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction

of the Court, (d) has been substantially diminished in value, or (e) has been commingled with

other property which cannot be divided without difficulty, the United States shall be entitled to

forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

## COUNT 84
### (Conspiracy to Launder Money)

1.     The grand jury incorporates paragraphs 1 through 5 of Counts 25 through 46,

paragraphs 1 through 5 of Counts 47 through 60, paragraphs 1 through 7 of Counts 61 through

72, and paragraphs 1 through 6 of Counts 73 through 83, as if fully set forth herein.

- 42 -

U.S. v. Alon Berkman, et al.

2.      Beginning in or about May 2004, the exact date being unknown, and continuing until in or about December 2012, in the District of Minnesota and elsewhere, defendants herein,

**ALON BERKMAN,<br>
BABUBHAI PATEL, ·<br>
ELIAS KARKALAS,<br>
PRABHAKARA TUMPATI,<br>
ONOCHIE AGHAEGBUNA, and<br>
EYAD MAHROUQ,**

unlawfully and knowingly conspired and agreed, together and with others known and unknown to the grand jury, to knowingly transport, transmit, and transfer funds and monetary instruments in a series of related transactions of a value exceeding $10,000, from a place outside the United States, that is, Hong Kong, to places in the United States, including the District of Minnesota, with the intent to promote the carrying on of specified unlawful activities, that is, mail fraud, wire fraud, and Controlled Substance Act offenses, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

**PURPOSE, MANNER, AND MEANS OF THE CONSPIRACY**

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to obtain large quantities of funds, thereby enriching themselves, in exchange for fraudulently distributing and dispensing prescription drugs to customers in the District of Minnesota and throughout the United States.

4.      It was a part of the conspiracy that defendants and their co-conspirators caused wire transfers to be made from financial institutions outside of the United States to United States bank accounts belonging to and associated with RX Limited physicians and pharmacists, in payment for the physicians' approval of RX Limited's customers' prescription drug orders, and in payment for the wholesale cost of drugs and dispensing fees for RX Limited fulfillment pharmacies. During the course of the conspiracy at least one RX Limited pharmacy was located in the District of Minnesota, and received such wire transfers from Hong Kong.

U.S. v. Alon Berkman, et al.

5.      It was also part of the conspiracy that defendants and their co-conspirators caused wire transfers to be made from financial institutions outside of the United States to the bank accounts of the owners and operators of RX Limited's marketing websites ("marketing affiliates"), at financial institutions in the United States, in payment for the marketing affiliates posting websites on the Internet.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE NOTICE

1.      The allegations of Count 84 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

2.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, the defendants, ALON BERKMAN, BABUBHAI PATEL, ELIAS KARKALAS, PRABHAKARA TUMPATI, ONOCHIE AGHAEGBUNA, and EYAD MAHROUQ, shall forfeit to the United States:

a.      any property, real or personal, involved in such offense, and any property traceable to such property; and

b.      a sum of money equal to the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the defendants, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States shall be entitled to forfeiture of

- 44 -

U.S. v. Alon Berkman, et al.

substitute property, pursuant to Title 21, section 853(p), as incorporated by Title 18, United

States Code, Section 982(b)(1) and Title 28, Section 2461(c).

## COUNT 85
### (Conspiracy to Distribute a Controlled Substance)

1.      The grand jury incorporates paragraphs 1 through 63 of Count One, paragraphs 1

through 7 of Counts 61 through 72, and paragraphs 1 through 6 of Counts 73 through 83, as if

fully set forth herein.

2.      Carisoprodol was a prescription drug marketed under the name Soma, and was a

centrally acting muscle relaxant. As of January 11, 2012, carisoprodol was a Schedule IV

controlled substance under the CSA. 21 C.F.R. § 1308.14(c)(5).

3.      Beginning in or about January 2012, the exact date being unknown, and

continuing until the date of the Indictment, in the District of Minnesota and elsewhere, defendant

herein,

### SHAI REUVEN,

knowingly and intentionally conspired and agreed with others known and unknown to the grand

jury, to distribute quantities of carisoprodol, a Schedule IV controlled substance marketed as

Soma, other than for a legitimate medical purpose and not in the usual course of professional

practice.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(2), and 846;

Title 21, Code of Federal Regulations, Section 1306.04.

## FORFEITURE NOTICE

1.      The allegations contained in Count 85 of this Indictment are hereby realleged

and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant

to Title 21, United States Code, Section 853.

2.      Pursuant to Title 21, United States Code, Section 853, upon conviction of an

U.S. v. Alon Berkman, et al.

offense in violation of Title 21, United States Code, Section 841, the defendant, SHAI

REUVEN, shall forfeit to the United States:

     a.     any property constituting, or derived from, any proceeds obtained, directly or

indirectly, as the result of such offenses and any property used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of, the offenses; and

     b.     a sum of money equal to the total amount of money involved in each offense for

which the defendant is convicted.  If more than one defendant is convicted of an offense, the

defendants so convicted are jointly and severally liable for the amount involved in such offense.

     3.     If any of the property subject to forfeiture, as a result of any act or omission of

any of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been

transferred or sold to, or deposited with, a third party, (c) has been placed beyond the jurisdiction

of the Court, (d) has been substantially diminished in value, or (e) has been commingled with

other property which cannot be divided without difficulty, the United States shall be entitled to

forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL

_____
FOREPERSON

STUART F. DELERY
ASSISTANT ATTORNEY GENERAL
CIVIL DIVISION
U.S. DEPARTMENT OF JUSTICE

_____
LINDA I. MARKS
SENIOR LITIGATION COUNSEL
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

_____
PERHAM GORJI
TRIAL ATTORNEY
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

- 46 -